UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT A. COLLINS,

Plaintiff,

v.

BRIAN FISCHER; WILLIAM LEE,

Defendants.

15-CV-103 (KMK)

OPINION & ORDER

Appearances:

Robert A. Collins
Stormville, NY
*Pro Se Plaintiff*

Yan Fu, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiff Robert A. Collins ("Plaintiff"), currently incarcerated at Green Haven Correctional Facility ("Green Haven"), brings this pro se Action under 42 U.S.C. § 1983, against Brian Fischer, Former Commissioner of Department of Correction and Community Supervision ("Fischer"), William Lee, Former Superintendent of Green Haven ("Lee"), Downstate Correctional Facility, Queens Hospital Center, Long Island Jewish Hospital, Zucker Hillside Medical Center, Flushing Hospital Medical Center, Creedmore Psychiatric Center, New York State Office of Mental Health, New York City Police Department, and New York City Department of Environmental Protection, (collectively, "Defendants"), alleging that Defendants

violated his constitutional rights.[1] Before the Court is a Motion To Dismiss on behalf of Defendants Fischer and Lee (the "State Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. To. Dismiss Pursuant to Rule 12(b)(6) ("Defs.' Mot.") 1 Dkt. No. 44).) For the reasons to follow, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint and are taken as true for the purpose of resolving the instant Motion.[2] At the time of the events described herein, Plaintiff was an inmate at Green Haven. (Second Amended Complaint ("SAC") 10 (Dkt. No. 11).) Plaintiff alleges (1) an Eighth Amendment claim against Lee based on the "inhumane" conditions of his confinement at Green Haven and (2) that Fischer failed to respond to a grievance. As the claims against the other Defendants have been dismissed, (*see* Order to Amend 6 (Dkt. No. 7); Opinion & Order Dismissing Defs. City of New York and Queens

---

[1] Pursuant to an Order To Amend issued by then-Chief Judge Loretta A. Preska, Plaintiff's claims against Creedmore Psychiatric Center, the New York State Office of Mental Health, and Downstate Correctional Facility were dismissed as barred by the Eleventh Amendment. (*See* Order To Amend 6 (Dkt. No. 7).) Plaintiff's claims against Long Island Jewish Hospital, Zucker Hillside Medical Center, and Flushing Hospital Medical Center were dismissed for failure to state a claim as these Defendants are private facilities and not proper defendants to an action under § 1983. (*See id.* at 7.)

Further, pursuant to Judge Preska's instruction, (*see id.* at 7–8), Plaintiff substituted the City of New York for the New York City Police Department and the New York City Department of Environmental Protection in his Second Amended Complaint, (*see* Second Amended Complaint ("SAC") (Dkt. No. 11)).

Additionally, the Court granted Defendants' City of New York and Queens Hospital Center Motions To Dismiss in a separate Opinion. (*See* Dkt. No. 48.)

[2] The Court notes that despite the fact that it is titled Plaintiff's "Second Amended Complaint," Plaintiff's SAC is actually his third amendment. (*See* Dkt. Nos. 1, 6, 9, 11.) The SAC consists of an "Amended Complaint" form and both type-written and handwritten attachments. Citations to page numbers in the SAC refer to the ECF-generated page numbers listed at the top of the document.

Hospital (Dkt. No. 48)), the Court only recounts facts relevant to the alleged conduct of the State Defendants.

1. The Eighth Amendment Claim

On November 1, 2012, Plaintiff was waiting to be escorted to vocational class when he "was told by a Correction Officer that [he] had a call-out to see . . . one of the therapists." (SAC 10.) Upon arriving to the "Psychiatric Services Unit," Plaintiff "was stripped of [his] clothes by the Corrections Officers providing security there, and then confined in one of the cells (referred to as 'tanks')." (*Id.*)[3] In those cells, there are "bright, fluorescent lights" that are "kept on twenty-four hours a day." (*Id.*) Plaintiff "was forced . . . to wear a smock that fastened with Velcro straps," and was "very cold in the cell" with no clothes. (*Id.*) He "was made to eat [his] meals without any type of eating utensil." (*Id.*)

Plaintiff was kept in the tank until 2:00 a.m. on November 4, 2012, when he was transferred to Downstate Correctional Facility ("Downstate"). (*Id.*) His clothes were returned to him for the trip to Downstate, but were again taken from him and he was confined in "cell seventeen of Downstate's D-Block." (*Id.*) On November 5, 2012, Plaintiff was seen by a psychiatrist and social worker at Downstate. (*Id.* at 11.) At the end of the interview, his clothes were returned to him. (*Id.*) On November 6, 2012, he was again interviewed by a psychiatrist named Espirito. (*Id.*) He spent the next day in "Cell D-seventeen" at Downstate. (*Id.*)

[3] State Defendants suggest that the "Psychiatric Services Unit" is the Residential Crisis Treatment Program unit at Green Haven, which contains observation cells and dormitory beds. (Defs.' Mem. of Law in Supp. of Mot. To Dismiss Pursuant to Rule 12(b)(6) ("Defs.' Mem.") 2 n.2 (Dkt. No. 45).) To maintain consistency with the allegations in the Second Amended Complaint, the Court will refer to the area as the "Psychiatric Services Unit."

On November 8, 2012, Petitioner returned to Green Haven and was sent to a cell in "A-Block." (*Id.*) Later that day, he was again summoned to Psychiatric Services. (*Id.*) Plaintiff was told by a psychiatrist that since he had been outside the institution and returned, he had to undergo a period of "observation" and "medication compliance." (*Id.*) Plaintiff was then confined in a four-bed arrangement referred to as the Psychiatric Services Unit "dormitory." (*Id.*) He remained there until November 15, 2012, at which time he was released to his regular cell. (*Id.*) On December 7, 2012, Plaintiff was again taken to the Psychiatric Services Unit and was confined in a tank until his release on December 10, 2012. (*See id.*)

On December 18, 2012, Plaintiff was "keeplocked" and given a Tier III infraction by Corrections Officer Stevens. (*Id.* at 11–12.) On December 21, 2012, Plaintiff appeared at a disciplinary hearing before Assistant Deputy Superintendent O'Neil for that infraction, to which he pled not guilty. (*Id.* at 12.) After the hearing, the escort officer, Correction Officer Martin, took Plaintiff back to the Psychiatric Services Unit, where he spent three days in the tank, followed by three days in the dormitory, and another three days in the tank. (*Id.*) Then, on December 31, 2012, he was released back to his regular cell. (*Id.*) Plaintiff "was still keeplocked." (*Id.*) On January 4, 2013, Plaintiff was taken back to the Psychiatric Services Unit. (*Id.*) He was released on January 7, 2013. (*Id.*)[4]

Plaintiff alleges he experienced "trauma" from the conditions in Green Haven's Psychiatric Services Unit and the "methods in which [he] was dealt with by Psychiatrists, Psychologists, and Social Workers" in Downstate's D-Block. (*Id.* at 20.) Plaintiff alleges Lee "toured the Psychiatric Unit's 'dormitory' and 'tank' areas routinely, and was fully cognizant of

---

[4] Plaintiff does not indicate whether he was placed in the tank or dormitory cells during his January 4 to January 7, 2013 confinement in the Psychiatric Services Unit.

the inhumane measures employed by the Office of Mental Health operating in conjunction with the Department of Correction and Community Supervision [("DOCCS")]." (*Id.* at 14.) Plaintiff seeks financial compensation "for the time [he] was confined in the Psychiatric Service Unit [at Green Haven] . . . between the months of September 2012 and January 201[3], and for the time [he] spent in Downstate's D-Block in November 2012." (*Id.* at 18.) Plaintiff "would also greatly appreciate being compensated for the pain, suffering, degradation, and mental anguish [he] experienced" at the two facilities. (*Id.*)

2. The Grievance Process Claim

In December 2012, Plaintiff filed a grievance at Green Haven for harassment against Correction Officer Stevens. (*See id.* at 12.) Plaintiff alleges that "Commissioner Brian Fischer alleges that he was not appealed to, despite [Plaintiff's] Aunt . . . writ[ing] him and appris[ing] him of [Plaintiff's] grievance against Correction Officer Stevens." (*Id.* at 14.) Plaintiff states his "Article 78 was affirmed because [he] failed to exhaust [his] administrative remedies." (*Id.*)

B. Procedural History

Plaintiff filed the initial Complaint on January 5, 2015. (Dkt. No. 1.) On February 18, 2015, Plaintiff filed an Amended Complaint. (Dkt. No. 6.) On March 4, 2015, then-Chief Judge Loretta A. Preska issued an Order To Amend, dismissing certain Defendants, identifying deficiencies in Plaintiff's Amended Complaint, and instructing Plaintiff to again amend his Complaint. (Order to Amend.) On March 10, 2015, Plaintiff filed an Amended Complaint, (Dkt. No. 9), which Judge Preska found was still deficient; Plaintiff was thus ordered to again file an amended pleading, (Second Order to Amend (Dkt. No. 10)). On April 9, 2015, Plaintiff filed the Second Amended Complaint, which is the operative complaint in this Action. (SAC.)

On May 15, 2015, Plaintiff's Action was transferred to this Court. (Dkt. (entry May 15, 2015).) On May 20, 2015, the Court issued an Order To Show Cause as to why certain Defendants should not be dismissed, as Plaintiff's claims against those Defendants were filed on behalf of Plaintiff's brother's estate. (Dkt. No. 13.) The Court simultaneously issued an Order of Service with respect to the remaining Defendants, granting Plaintiff 60 days to effect service. (Dkt. No. 14.) More than a year later, on June 30, 2016, the Court issued (1) a second Order To Show Cause why the Action should not be dismissed in its entirety for failure to prosecute, (Dkt. No. 17), and (2) an Order dismissing those Defendants named in the Court's May 20, 2015 Order To Show Cause, (Dkt. No. 18).

In a letter filed on July 13, 2016, Plaintiff informed the Court that he "never received" the "U.S. Marshals Service Process Receipt and Return Forms" to serve Defendants, (Dkt. No. 19), and on July 18, 2016, the Court thus ordered that new forms be sent to Plaintiff and granted Plaintiff 60 additional days to complete service, (Dkt. No. 20). In a letter filed September 13, 2016, Plaintiff informed the Court that he once again did not receive the forms, (Dkt. No. 21), and the Court again granted Plaintiff 60 days to effect service on Defendants, (Dkt. No. 22). In December 2016, nearly two years after the initiation of this Action, Plaintiff successfully served Defendants. (Dkt. Nos. 34–35, 42–43.)

On January 24, 2017, the City filed its Motion To Dismiss and accompanying papers, (Dkt. Nos. 31–33), and on January 31, 2017, Queens Hospital Center filed its Motion To Dismiss and accompanying papers, (Dkt. Nos. 36–38). On May 10, 2017, the Court granted both Motions To Dismiss. (Dkt. No. 48.)

On April 20, 2017, the State Defendants filed a Motion To Dismiss and accompanying papers. (Defs.' Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss Pursuant to Rule

12(b)(6) ("Defs.' Mem.") (Dkt. No. 45).) Plaintiff failed to file an opposition to the Motion, (Dkt. No. 50), and the Court deemed the Motion fully submitted, (Dkt. No. 51).

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation

omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)).

However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

1. Conditions of Confinement

Plaintiff raises three specific concerns regarding the conditions he faced while confined in the "tank" at Green Haven Psychiatric Services Unit: (1) the lights were kept on twenty-four hours a day; (2) Plaintiff was only wearing a "smock" and the cell was "very cold"; and (3) he was not given utensils with which to eat his meals. (SAC 10.)[5] Defendants argue Plaintiff has failed to state an Eighth Amendment claim. (Defs.' Mem. 4–9.)

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.[6] It is axiomatic that "[t]he conditions of a prisoner's confinement can give

[5] Plaintiff's Second Amended Complaint notes Plaintiff spent time in the "dormitory" of the Psychiatric Services Unit. (SAC 11.) Other than stating that Lee knew that the conditions in the tank and the dormitory were both "inhumane," (*see* SAC 14), Plaintiff alleges no specific facts regarding his time in the dormitory or the conditions he faced. Because such "naked assertions devoid of further factual enhancement" are insufficient to overcome the Motion To Dismiss, the Court finds that Plaintiff fails to state a claim regarding the conditions of his confinement during his November and December confinements in the dormitory. *Iqbal*, 556 U.S. at 678; *see also Howard v. City of New York*, No. 12-CV-4069, 2012 WL 7050623, at *4 (S.D.N.Y. Dec. 20, 2012) (granting motion to dismiss because "[t]he plaintiffs' 'naked assertions' that they suffered 'extreme pain' as a result of [the conditions of their confinement], without more, does not meet the standard for pleadings in a § 1983 action."), *adopted by* No. 12-CV-4069, 2013 WL 504164 (S.D.N.Y. Feb. 11, 2013).

[6] The Second Circuit recently held that deliberate indifference claims under the Due Process Clause of the Fourteenth Amendment are analyzed differently than the same claims

rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curium). "Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'" *Walker*, 717 F.3d at 125 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (italics omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125 (citing *Rhodes*, 452 U.S. at 347; *Phelps*, 308 F.3d at 185). Thus, prison officials violate the Constitution when they deprive an inmate of his "basic human needs" such as food, clothing, medical care, and safe and sanitary living conditions. *Id.* (internal quotation marks omitted.) "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions

---

under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). However, the Second Circuit limited its holding to pretrial detainees, who "have not been convicted of a crime and thus may not be punished in any manner." *Id.* at 29 (internal quotation marks omitted); *see also id.* at 33–34 (relying on the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which analyzed excessive force claims by pretrial detainees under the Fourteenth Amendment); *McCray v. Lee*, No. 16-CV-1730, 2017 WL 2275024, at *4 (S.D.N.Y. May 24, 2017) ("The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendment. . . . While the decision in *Darnell* set forth a new analysis for claims brought by pretrial detainees, the analysis under the Eighth Amendment remains intact." (citation omitted)). Per the New York State Department of Corrections and Community Supervision "Inmate Population Information Search," Plaintiff was not a pretrial detainee at the relevant time. *See* DOCCS, Inmate Population Information Search, http://nysdoccslookup.doccs.ny.gov/.

themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (internal quotation marks omitted). The court must consider the "severity and duration, on a case-by-case basis." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation).

Under the "subjective" requirement, a defendant "'cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Phelps*, 308 F.3d at 185–86 (quoting *Farmer*, 511 U.S. at 837). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *4 (S.D.N.Y. Feb. 17, 2015) (same); *Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *17 (E.D.N.Y. Aug. 20, 2014) (same). "Allegations of mere negligence by prison officials will not

support a claim under the Eighth Amendment." *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *5 (S.D.N.Y. Aug. 28, 2017).

Applying these principles to Plaintiff's allegations, the Court finds that Plaintiff has failed to state a plausible claim. First, Plaintiff alleges that the tank had "bright florescent lights" that were on "twenty-four hours a day." (SAC 10.) "Requiring inmates to live in constant illumination can . . . under certain circumstances, rise to the level of an Eighth Amendment violation." *Holmes v. Fischer*, No. 09-CV-829, 2016 WL 552962, at *17 (W.D.N.Y. Feb. 10, 2016). Indeed, the Second Circuit has recognized that sleep deprivation due to constant illumination can be sufficiently serious conditions that jeopardizes a prisoner's health. *See Walker*, 717 F.3d at 126 ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment."); *accord Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights.").

However, Plaintiff has failed to allege the illumination "pose[d] an unreasonable risk of serious damage to [his] health." *Walker*, 717 F.3d at 125. While Plaintiff alleges he was subjected to twenty-four hour illumination, he makes no reference to any harm or injury suffered as a result of the illumination, such as sleep deprivation. "[T]o succeed on a claim of illegal illumination, [a] plaintiff must produce evidence that the constant illumination had harmful effects on his health beyond mere discomfort." *Holmes*, 2016 WL 552962, at *17 (internal quotation marks omitted); *compare Daniels v. Pitkins*, No. 14-CV-2383, 2017 WL 890090, at *6 (M.D. Pa. Mar. 6, 2017) (granting a motion to dismiss when the plaintiff did "not indicate that he suffered any medical issue due to the 8 day period of constant illumination," or "indicate how it affected him") *with Holmes v. Grant*, No. 03-CV-3426, 2006 WL 851753, at *3, 11–12

(S.D.N.Y. Mar. 31, 2006) (denying a motion to dismiss plaintiff's claim that 24–hour illumination of the SHU for 35 days caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems because, as alleged, it would sustain both the objective and the subjective prongs of an Eighth Amendment analysis). Even liberally construing Plaintiff's Second Amended Complaint to assume Plaintiff suffered sleep deprivation, merely alleging suffering "some sleep deprivation . . . has consistently been held below the requisite severity for an Eighth Amendment claim." *Holmes*, 2016 WL 552962, at *17. Thus, Plaintiff pleads no "serious damage to his health," let alone an "unreasonable risk" of such damage in the future. *Walker*, 717 F.3d at 125. While Plaintiff seeks damages for "pain, suffering, degradation, and mental anguish," (SAC 18; *see also* SAC 20 (listing injuries as "trauma induced by conditions in Grenhaven [sic]"), he does not connect any injuries specifically to the illumination. These "naked assertions devoid of further factual enhancement" are insufficient to survive the Motion To Dismiss. *Iqbal*, 556 U.S. at 678. (alteration and internal quotation marks omitted); *see also Howard*, 2012 WL 7050623, at *4 (granting motion to dismiss because "[t]he plaintiffs' 'naked assertions' that they suffered 'extreme pain' as a result of [the conditions of their confinement], without more, does not meet the standard for pleadings in a § 1983 action"). Accordingly, Plaintiff has failed to meet the first prong of the test for the illumination, as he has not established that such conditions rendered his confinement constitutionally infirm.

Second, Plaintiff alleges he was only given a smock to wear and thus the tank was "very cold." (SAC 10.) Various courts, including the Second Circuit, have held that excessively hot or cold temperatures may qualify as a constitutional violation. *See, e.g., Gaston,* 249 F.3d at 165 (finding exposure to freezing temperatures for a period of five months can constitute a violation of the Eighth Amendment); *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir. 1988) (noting

exposure to "bitterly cold" and subfreezing temperatures for three months may constitute cruel and unusual punishment); *cf. Sleeper v. City of Richmond, Va.*, No. 12-CV-441, 2012 WL 3555412, at *7 (E.D. Va. Aug. 16, 2012) (finding excessive heat, which caused the death of the prisoner, could amount to an Eighth Amendment violation); *Clark v. Bandy,* No. 10-CV-169, 2011 WL 1346975, at *3 (N.D. Ga. Apr. 8, 2011) (holding prisoner could state an Eighth Amendment claim where he complained to prison officials of excessive heat and trouble breathing for three months).

District courts in the Second Circuit have also found allegations of exposure to uncomfortable temperatures for short periods of time insufficient to state an Eighth Amendment claim. *See, e.g., Stevens v. City of New York*, No. 10-CV-5455, 2011 WL 3251501, at *3–4 & n.2 (S.D.N.Y. July 22, 2011) (holding pretrial detainee housed in a cell with a broken window covered by a garbage bag during cold and rainy weather for as many as four days did not plausibly allege a constitutional violation); *Borges v. McGinnis,* No. 03-CV-6375, 2007 WL 1232227, at *6 (W.D.N.Y. Apr. 26, 2007) (finding inmate, wearing a paper gown and slippers, with no blanket, residing in a cell that was approximately 50 degrees for three days did not suffer a constitutional deprivation).

However, the Second Circuit recently confirmed that there is no "bright-line durational or severity threshold" that a deprivation must meet. *Darnell*, 849 F.3d at 32; *id.* at 31 ("While the claims before the Court in *Willey* related to unsanitary conditions and inadequate nutrition, this Court has been reluctant to impose bright-line durational or severity limits in conditions of confinement cases."). "While the proper inquiry for a conditions of confinement claim is by reference to the duration and severity of the conditions, the claim d[oes] not require a 'minimum duration' or 'minimum severity' to reach the level of a constitutional violation." *Id.* at 21.

Indeed, the *Darnell* court admonished the district court for "stress[ing] that the plaintiffs were not regularly denied humane conditions of confinement," and that plaintiffs did not allege that "the conditions existed for . . . more than ten to twenty-four hours." *Id.* at 37 (italics omitted). Accordingly, the Court considers the duration and severity of the temperature Plaintiff faced together, and finds that Plaintiff has not alleged that the conditions he faced were sufficiently serious to constitute objective deprivations under the Eighth Amendment.

First, Plaintiff does not indicate how cold the temperature in the cell actually was. Plaintiff only alleges he was "very cold," (SAC 10), but there are no allegations of exposure to "freezing and sub-zero temperatures" through open windows, *Gaston*, 249 F.3d at 165. *See also Trammell v. Keane*, 338 F.3d 155, 164–65 (2d Cir. 2003) (concluding that the plaintiff "no doubt" experienced uncomfortable conditions of confinement, including, according to the plaintiff, being kept naked for a "prolonged period in bitter cold," but finding no constitutional violation where there was no evidence "that the cell in which he was housed was open to the elements, that it lacked adequate heat, or . . . that the cell was bitter cold" (internal quotation marks omitted)); *cf. Corselli*, 842 F.2d at 27 (finding allegations of "bitterly cold temperatures" coming in through empty, "large window frames" such that there was "ice in the toilet bowl" to be sufficient to state a claim). Petitioner has no right to be "comfortable," *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999), and a non-specific allegation of being "very cold," (SAC 10), does not suffice to plead the type of "extreme deprivation[]" typically necessary to constitute an Eight Amendment claim, *Blyden*, 186 F.3d at 263. Thus, the Court finds Plaintiff has not alleged a particularly severe deprivation. Second, Plaintiff does not allege how long he was exposed to the "very cold" temperature. Plaintiff's Second Amended Complaint does not state whether the temperature complained of occurred only during his November 1 to November 4, 2012

confinement in the tank, (*see id.* at 10), or whether he experienced similar conditions when he was housed in the tank from December 7 to 10, 2012, for two three-day periods between December 12 to 31, 2012, and possibly from January 4 to 7, 2013, (*see id.* 11–12). Plaintiff only alleges it was "very cold in the cell" during October. (*Id.* at 10). Even construing Plaintiff's Second Amended Complaint liberally and assuming Plaintiff experienced the "very cold" temperatures during the four to five approximately three-day periods he was housed in the tank, the Court does not find that to represent a significant duration.

Accordingly, the Court holds Plaintiff has failed to allege he suffered exposure to severe temperatures for a long duration. There is a clear divide in the case law between the claims alleging only handful of days of uncomfortable temperatures and cases alleging much longer periods of exposure to extreme temperatures. *Compare Stevens*, 2011 WL 3251501, at *4 (finding four days of a broken window "somewhat" covered by a garbage bag in May where temperature was "not comparable—either in terms of severity of conditions or duration of time—to those in cases in which the Second Circuit has found a constitutional violation"); *Borges*, 2007 WL 1232227, at *6 (finding in cell temperature of 50 degrees for three days is not a constitutional deprivation) *with Gaston*, 249 F.3d at 165 (finding exposure to freezing and sub-zero temperatures for entire winter sufficient in severity and duration); *Corselli*, 842 F.2d at 27 (finding months of exposure to sub-freezing temperatures in the cell sufficient in severity and duration); *Wright*, 387 F.2d at 521 (finding exposure to sub-freezing temperatures for 21 days sufficient in severity and duration). Having considered Plaintiff's allegations regarding the severity and duration of the temperatures he experienced, the Court does not find that four to five days of uncomfortable, but not bitterly or extremely cold temperatures, is sufficient to state an objectively serious deprivation that rises to the level of a constitutional violation.

Third, Plaintiff alleges he was not provided utensils to eat his meals with during his time in the tank and had to eat with his hands. (SAC 10.) "[T]he Eighth Amendment . . . requires that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 489 (S.D.N.Y. 2014) (alterations and internal quotations omitted). However, numerous courts have found that failure to provide eating utensils does not suffice to state an Eighth Amendment claim. *See, e.g.*, *Alston v. Butkiewicus*, No. 09-CV-207, 2012 WL 6093887, at *10 (D. Conn. Dec. 7, 2012) ("That the plaintiff was not provided utensils to eat oatmeal from a styrofoam cup, although unfortunate, is not of constitutional magnitude.") (collecting cases). Plaintiff does not describe how his lack of eating utensils caused "serious damage to his health," sufficient to satisfy the Eighth Amendment injury. *Walker*, 717 F.3d at 125. The Second Amended Complaint thus fails to allege a sufficiently serious deprivation regarding his meals to substantiate an Eighth Amendment conditions-of-confinement claim.

Even assuming that Plaintiff has alleged one or more objectively serious deprivation—which he has not—he fails to sufficiently plead deliberate indifference to support an Eighth Amendment claim. *See Farmer*, 511 U.S. at 837 (noting that a plaintiff must allege an official knowingly disregarded an excessive risk to inmate health or safety to state an Eighth Amendment claim for inhumane conditions of confinement). To survive the Motion To Dismiss, Plaintiff must allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Here, Plaintiff fails to identify an individual who is responsible for the conditions of which he complains. Plaintiff only asserts that Lee "toured the Psychiatric Unit's 'dormitory'

and 'tank' areas routinely, and was fully cognizant of the inhumane measures employed by the Office of Mental Health operating in conjunction with [DOCCS]." (*See* SAC 14.) However, Plaintiff does not allege what particular "inhumane conditions" Lee observed Plaintiff suffering from. Merely stating that Lee was "fully cognizant of the inhumane measures" is insufficient to demonstrate that Lee actually knew about the specific conditions which Plaintiff has complained of. For example, there is no allegation that Lee observed the 24 hour illumination or the lack of utensils, or that the area was "very cold" during one of Lee's walk-throughs. *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 640 (S.D.N.Y. 2016) (dismissing claim that the defendant "knew unconstitutional practices were afoot" because "there [wa]s nothing to suggest one way or the other that the allegedly 'unconstitutional practices' of which [the defendant] was aware were the same as those alleged in [the plaintiff's] [a]mended [c]omplaint").

While Plaintiff claims that Lee's tours necessarily gave him knowledge of the conditions to which he were indifferent, this alone does not equate to deliberate indifference because Plaintiff has failed to demonstrate that Lee acted with "a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. Plaintiff does not allege that Lee had knowledge of the illumination, lack of utensils, or uncomfortable temperatures and "disregarded an excessive risk to inmate health or safety," or that he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and actually "drew the inference.'" *Phelps*, 308 F.3d at 185–86. (*Id.* at 14.) And, even if Lee actually knew about the conditions, Lee was at best negligent in failing to address them. There is no allegation that Lee wantonly disregarded Plaintiff's health and safety. *See Seymore v. Dep't of Corr Servs*., No. 11-CV-2254, 2014 WL 641428, at *4 (S.D.N.Y. Feb. 18, 2014) ("The allegations are insufficient to allege plausibly that any individual defendant acted with a sufficiently culpable state of mind because the plaintiff

has, at most, alleged that various defendants were negligent in failing to correct conditions, not that any defendant obdurately and wantonly refused to remedy a specific risk to the plaintiff."). As Plaintiff has failed to meet both the objective and subjective elements of the test, Plaintiff's Eighth Amendment claim against Lee is dismissed.

2. Claims against Defendant Fischer

Plaintiff's claim against Fischer appears to be that Fischer lied about not receiving Plaintiff's appeal of his grievance. In particular, Plaintiff asserts that "Commissioner Brian Fischer alleges that he was not appealed to, despite [Plaintiff's] Aunt . . . writ[ing] him and appris[ing] him of [Plaintiff's] grievance against Correction Officer Stevens." (SAC 14.) As a result, Plaintiff's state law claims were dismissed for failing to exhaust administrative remedies. (*Id.*)

"While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress," *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001), Plaintiffs claim fails, because "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim," *Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, at *13 (N.D.N.Y. July 13, 2011), *adopted by*, 2011 WL 3439524 (N.D.N.Y. Aug. 5, 2011). "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Cancel*, 2001 WL 303713, at *3. Plaintiff's claim against Fischer is dismissed.

III. Conclusion

For the reasons discussed herein, Defendants' Motion To Dismiss is granted. If Plaintiff wishes to file a Fourth Amended Complaint, he must do so within 30 days of the date of this

Opinion & Order. Failure to do so might result in dismissal of this case. Plaintiff should include within that Amended Complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The Amended Complaint will replace, not supplement, the original complaint. The Amended Complaint must contain *all* of the claims and factual allegations the Plaintiff wishes the Court to consider.

The Clerk of the Court is directed to mail a copy of this Order to Plaintiff and terminate the pending Motion. (Dkt. No. 33.)

SO ORDERED.

Dated: March 29, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE